**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MYANH THI NGUYEN, | ) | CASE NO. 3:18-cv-00600 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Myanh Thi Nguyen (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD") and Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et*

*seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule

72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be AFFIRMED.

### I. Procedural History

On July 9, 2015, Plaintiff filed her applications for POD and DIB, alleging a disability

onset date of June 30, 2014. (Transcript ("Tr.") 143-153). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 93-100). Plaintiff participated in the hearing on February 7, 2017, was represented by counsel, and testified. (Tr. 45-72). A vocational expert ("VE") also participated and testified. *Id*. On May 1, 2017, the ALJ found Plaintiff not disabled. (Tr. 39). On January 10, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On March 15, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12 & 13).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by failing to account for symptoms related to scoliosis and degenerative disc disease; and (2) the residual functional capacity ("RFC") determination did not account for her limited English skills. (R. 12, PageID# 564).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On January 28, 2014, Ryan Szepiela, M.D., ordered an x-ray of Plaintiff's knees. (Tr. 325-328). Both x-rays were unremarkable. *Id*.

---

[1]  Contrary to the court's initial order, Plaintiff's brief fails to set forth a meaningful discussion of the relevant facts and merely contains a brief summary of Plaintiff's diagnoses, without citations to the transcript, and a list of her medications. (R. 12, PageID# 568-569). "Any fact in the transcript not referred to in a party's Statement of Relevant Facts may be deemed non-essential to the determination of the issues presented." (R. 6, PageID# 53). Thus, the court incorporates the statement of the relevant medical evidence from the Commissioner's brief. (R. 13, PageID# 585-588).

On February 10, 2015, Plaintiff reported pain in her back, knee, thigh, and hands, as well as swelling of the hands in the morning. (Tr. 276). On physical examination, Plaintiff had decreased lordosis of the lumbosacral spine, bilateral muscle spasm on palpation of the paraspinal muscles, 5/5 strength in all muscles tested, normal gait, no clubbing or cyanosis of her fingernails, no joint swelling, normal movements of her extremities, no joint instability, and normal muscle strength and tone. (Tr. 279). In addition, the following three tests were all negative: lumbar spine instability test; slump test; and Thomas test. *Id*. Dr. Szepiela increased Plaintiff's Gabapentin prescription, noted that Plaintiff was not active, and placed her in warm water aquatic therapy. *Id*. She was instructed to use Vicodin sparingly. *Id*.

On March 16, 2015, Plaintiff was seen by Jessica Yonley, D.O. (Tr. 360-364). Plaintiff reported that aqua therapy helped a lot on the days that she attends, and she wanted to attend even more sessions than prescribed. (Tr. 360). On physical examination, Plaintiff had a shuffled gait but required no assistive device. (Tr. 363). Cervical lordosis was normal, thoracic kyphosis was increased, lumbar lordosis was decreased, and her scoliosis was moderate. *Id*. Dr. Yonley advised Plaintiff to use heat on her lower back, to perform stretches she showed her, and to continue her water therapy. (Tr. 364).

On March 26, 2015, Dr. Szepiela observed that Plaintiff was "doing better with her back with aquatic therapy." (Tr. 274). On physical examination, Plaintiff had a normal gait, no joint swelling, no clubbing or cyanosis of the fingernails, normal movement in all extremities, no joint instability, and normal muscle strength and tone. *Id*. Dr. Szepiela assessed muscle spasm and arthritis of both hands. *Id*.

On April 14, 2015, x-rays of Plaintiff's right hand revealed "no fracture, dislocation, or destructive lesion. Joint space is well preserved. There is some narrowing at the third DIP joint."

(Tr. 441).

On May 28, 2015, Plaintiff continued to complain to Dr. Szepiela of back pain, hand pain, and right foot pain. (Tr. 266). On physical examination, Dr. Szepiela made no observations concerning Plaintiff's back, but noted normal appearance of Plaintiff's right hand and fingers, no hand tenderness, and normal range of motion. (Tr. 269). Dr. Szepiela ordered an MRI of Plaintiff's lower back, and noted Plaintiff was getting a foot x-ray and would see a podiatrist for a bunion. *Id.*

On June 17, 2015, an MRI of Plaintiff's lumbar spine yielded the following impression: "Multilevel changes of degenerative disc disease as detailed above. Findings are most profound at L4-LS where there is lateral recess stenosis and right-sided neural foraminal stenosis. There is also mild left-sided neural foraminal stenosis at L5-S1." (Tr. 435).

On April 26, 2016, Plaintiff was seen by Patrick W. McCormick, M.D., for a neurosurgery consultation. (Tr. 455). Dr. McCormick observed that Plaintiff was present with an interpreter. *Id.* "The interpreter explained to [Dr. McCormick] that [Plaintiff] does speak very good English, but she wanted the interpreter there to make sure she understood everything" and to help her with questions "if she could not come up with the exact right vocabulary." *Id.* Plaintiff reported pain that radiated down her leg with episodic numbness and tingling. *Id.* On physical examination, Dr. McCormick found 5/5 strength in the upper and lower extremities, normal tone in all four extremities, and no evidence of atrophy or fasciculation in any muscle group tested. (Tr. 456). The sensory examination revealed grossly intact sensation in all four extremities. *Id.* Plaintiff's station was normal, and her gait had "mild antalgic features." *Id.* Her deep tendon reflexes were "1 + and symmetric," and no pathologic reflexes were identified. *Id.* Straight leg raise test was positive on the left at 40 degrees and negative on the right. (Tr. 457). The lumbar spine was non-

4

tender to palpation and range of motion was limited in all planes. *Id.* Plaintiff's "ultimate decision was to avoid surgery and to continue nonsurgical treatment;" Tylenol No. 3 was added to her pain regimen for intense episodes of stabbing pain in the leg. *Id.*

On October 24, 2016, Plaintiff returned to see Dr. McCormick and indicated that her chief complaint had changed from left lower extremity radiculopathy, which had resolved, to right-sided lower extremity radiculopathy. (Tr. 463). She also reported increasing discomfort in her upper thoracic region and one episode of shortness of breath, which Plaintiff stated was due to her worsening scoliosis as suggested by imaging studies. *Id.* Plaintiff denied any ongoing difficulty with respiration. *Id.* She was advised to return to Dr. McCormick to discuss the need to have her scoliosis surgically repaired. *Id.* Plaintiff's examination results were the same as before, but Dr. McCormick additionally found that the range of motion in her lumbar spine was limited in all planes with an obvious scoliotic deformity. (Tr. 464-465). However, straight leg raise testing was negative bilaterally. (Tr. 465). Dr. McCormick "doubt[ed] very much that her event of respiratory symptoms was related to the scoliosis in that I have seen many patients over the years with this pattern of scoliosis that is typically left untreated." *Id.*

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On September 2, 2015, state agency medical consultant Venkatachala Sreenivas, M.D., reviewed the evidence of record. (Tr. 78-80). He opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence alone. (Tr. 78). He opined Plaintiff was only partially credible because "Clmt treated for alleged impairments, imaging confirms severe deficits. Clmt provided conflicting functional statements, indicating [s]he can not take care of himself, but then states [s]he helps take care of [her] grandmother, does laundry, drives, shops, etc." *Id.* Dr.

Sreenivas opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand/walk for four hours, and sit for six hours in an eight-hour workday. (Tr. 79). Also, she could not climb ladders, ropes, and scaffolds, could occasionally stoop, and frequently climb ramps and stairs, balance, and crawl. (Tr. 79-80). She had no manipulative, visual, communicative, or environmental limitations. (Tr. 80).

On December 4, 2015, state agency medical consultant Esberdado Villanueva, M.D., reviewed the record, noting Plaintiff alleged a worsening of symptoms and the need for additional evidence, but that claimant was unable to attend a consultative examination because she was out of the country. (Tr. 87). He further noted Plaintiff did not respond to multiple contact attempts. (Tr. 91).

On December 7, 2015, state agency psychological consultant Todd Finnerty reviewed the evidence of record and found there was insufficient evidence of a mental impairment (Tr. 88).

On June 8, 2016, Dr. Szepiela wrote a "To Whom It May Concern" letter that stated in its entirety: "Please keep Myanh on light duty working restrictions lifting nothing greater than 10lbs until further notice. Any question please call my office." (Tr. 459, Exh. 6F).

On October 3, 2016, Todd Ebel, M.D., completed a checklist questionnaire indicating that Plaintiff could stand/walk for less than one hour and sit for less than two to three hours total in an eight-hour workday (Tr. 461). He further opined she could lift 6 to 10 pounds frequently and 25 to 50 pounds occasionally, but was extremely limited in her ability to push/pull and markedly limited in her ability to bend, reach, and handle. *Id*. Dr. Ebel stated that "Patient's limited spinal ROM [range of motion] 2/2 scoliosis, that is progressing and starting to effect [sic] respiratory status. Chronic nature of issue has lead to severe OA [osteoarthritis] of legs at knees and hips. No good therapy or alternative exists for treatment of spinal [illegible] progressing." *Id*. On the

same date, Dr. Ebel completed a checklist mental functional capacity assessment indicating Plaintiff was not significantly limited in any area of mental functioning. (Tr. 462).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2020.

2. The claimant has not engaged in substantial gainful activity since June 30, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: scoliosis and lumbar spine degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: she can stand and/or walk a total of four hours in an eight-hour workday; frequently climb ramps/stairs; never climb ladders, ropes, or scaffolds; frequently balance and crawl; and occasionally stoop.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on ***, 1966 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the

claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 32-39).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id*. However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

**1. Limitations Stemming From Scoliosis and Degenerative Disc Disease**

Plaintiff's first assignment of error raises a number of alleged shortcomings, which will be addressed in turn.

**a. Lifting Limitation of Dr. Szepiela**

On June 8, 2016, Dr. Szepiela wrote a "To Whom It May Concern" Letter that stated, in its entirety, as follows: "Please keep [Plaintiff] on light duty working restrictions lifting nothing greater than 10 lbs. until further notice. Any question please call my office." (Tr. 459, Exh. 6F). The ALJ ascribed this specific opinion "only partial weight, as there is no explanation of what Dr. Szepiela meant by 'light duty' and no indication that he is familiar with how that term is defined in the regulations (20 CFR 404. l567(b)) or in the Dictionary of Occupational Titles. Moreover, a lifting restriction of 10 pounds is not consistent with the work the claimant was performing as a waitress from May through September of 2016, at the time of Dr. Szeipiela's [sic] opinion (testimony of claimant and vocational expert)." (Tr. 36). Plaintiff does not argue that the ALJ failed to give good reasons for rejecting Dr. Szepiela's unexplained opinion or that the ALJ failed to explain the reasons for according only partial weight to his opinion. (R. 12, PageID# 571). Instead, the entirety of Plaintiff's argument is the assertion that: "the record contains no evidence establishing the number or amount of food trays and their respective weights, nor the length of shifts, nor whether Nguyen undertook other kitchen tasks, such as dishwashing or food preparation, nor even if Nguyen was working full or part time or some combination of both." (R. 12, PageID# 571-572). Plaintiff concludes by pointing out that the ALJ found Plaintiff's earnings derived from waitressing did not rise to the level of substantial

gainful activity ("SGA"). (R. 12, PageID# 572).

Plaintiff's argument fails to persuade the court a remand is required. First, the court does not reweigh the evidence. Second, Dr. Szepiela's opinion is entirely unsupported and completely devoid of any explanation for the assessed lifting limitation. "Supportability" is one of the factors specifically set forth in the regulations used to evaluate medical opinions. The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).[2]

The ALJ did, however, accord partial weight to the opinion of a treating source, Dr. Ebel, specifically noting his opinion concerning Plaintiff's ability to lift was consistent with the RFC finding for light work. (Tr. 36). In addition, the ALJ also accorded great weight to the opinion of State Agency physician Dr. Sreenivas that Plaintiff could perform light work. (Tr. 36-37). State agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that

---

[2] Given the complete lack of any meaningful explanation in Dr. Szepiela's brief letter, the opinion is arguably patently deficient. The Sixth Circuit and numerous district courts have found that failure to give good reasons for rejecting a check-box/checklist opinion, which is unaccompanied by any explanation, is harmless error. *Hernandez v. Commissioner*, 644 Fed. App'x 468, 474 (6th Cir. Mar. 17, 2016) (finding that such evidence was "'weak evidence' at best' and meets our patently deficient standard") (citations omitted); *accord Shepard v. Commissioner*, 705 Fed. App'x 435 (6th Cir. Sept. 26, 2017); *Toll v. Commissioner*, No. 1:16CV705, 2017 WL 1017821 at *4 (W.D. Mich. Mar. 16, 2017) ("even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis ); *Denham v. Commissioner*, No. 2:15CV2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) (magistrate judge "correctly found that any error in the ALJ's consideration of Lewis' evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it").

the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work."); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework.")

Finally, the VE testified that the job of a waitress fell into the light exertional category. (Tr. 68). While it is true that the ALJ did not consider that position as "past relevant work" because the earnings derived therefrom did not rise to the level of SGA, such a finding does not detract from the fact that waitress work is in the light exertional category, which, according to the regulations, involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). As such, the ALJ's inference—that Plaintiff was capable of lifting more than ten pounds as demonstrated by her waitressing at the same time Dr. Szepiela imposed the lifting restriction—is not the product of conjecture but based on expert testimony.

### b. Credibility of Plaintiff

Plaintiff takes issue with the ALJ's failure to credit portions of her testimony, especially her

ability to sit, stand/walk, and lift. (R. 12, PageID# 572).

As the ALJ's decision is dated May 1, 2017, Social Security Ruling ("SSR") 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) applies to this action, as it superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996) with respect to "determinations and decisions on or after March 28, 2016."[3]  According to SSR 16-3p (as well as SSR 96-7p), evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *2-3.

Plaintiff's Brief on the Merits, however, has not developed a legal argument alleging any substantive or procedural deficiency regarding the ALJ's above credibility analysis. (R. 12, PageID# 572). Rather, Plaintiff merely concludes that the ALJ should have credited certain aspects of a claimant's testimony. Accordingly, she has waived any argument on the issue. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 U.S. Dist. LEXIS 64805, 2016 WL 2868735 at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's

---

[3] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the more recent ruling, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p.

assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors).

In addition, the court finds no error in the ALJ's credibility determination. The ALJ's decision found the first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms." (Tr. 35). Once step one is satisfied, when considering the intensity, persistence, and limiting effects of an individual's symptoms, an ALJ should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in SSR 96-7p).

However, an ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based

on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation"). "In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p at *10.[4] Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at *10. A reviewing court should not disturb an ALJ's credibility "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

The ALJ addressed the credibility of Plaintiff's alleged limitations in a lengthy discussion:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--*i.e.*, an impairment(s)

---

[4] SSR 16-3p merely replaced the term "credible" in this sentence from SSR 96-7p with the terms "supported or consistent." 2016 WL 1119029 at *9.

that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant alleged that she is disabled due to scoliosis, lumbar disc degeneration and arthritis (2E). She reported she moves slowly and falls easily, and has difficulty using her hands due to arthritis in both of her wrists (3E, 5E). She described worsening back pain making it hard for her to walk, and aching in her bones and joints (7E). She indicated she needs significant assistance from others with her activities of daily living (3E).

At the hearing, the claimant testified that she has back pain when she walks, sits or stands, so she cannot do so for long periods of time, and she has to change positions. She said she has pain in her neck and arms if she reaches or lifts things, and pain and numbness in her hands and fingers.

She said her arms sometimes feel paralyzed. She also described pain in her hips, knees, leg and foot. She testified that she can sit for about 30 minutes if she takes medications, and she has to take rest breaks when she walks. She said she can lift five or ten pounds when she takes medications, but if she does not, she cannot lift even a bottle of water. She said it was painful for her to lift trays of food when she was working in 2016, but she had to because it was required by the job. The claimant said she takes multiple medications, including oxycodone, ibuprofen, Mobic and meloxicam, but they give her indigestion and affect her vision. She said she also gets steroid injections.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record, for the reasons explained in this decision.

(Tr. 34-35). After summarizing and analyzing significant portions of the medical record, the ALJ

16

further found as follows:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the undersigned has also considered other evidence in assessing the claimant's statements regarding her limitations and restrictions. One of these factors is the individual's daily activities. Among other factors are the location, duration, frequency and intensity of the individual's pain or other symptoms, the type of treatment the individual has received for relief of pain or other symptoms, and the type, dosage, effectiveness and side effects of medications the individual has taken to alleviate pain or other symptoms. (See 20 CFR 404.1529).

> In this instance, however, the above factors are not probative of disability. The claimant's daily activities have included working part-time throughout much of the period at issue, as discussed at Finding 2. Although this work was not performed at the level of substantial gainful activity, it nevertheless tends to indicate the claimant is capable of some work tasks. She also attended college classes during the time period at issue in this claim (testimony). This level of daily activity is not consistent with the severity of symptoms and limitations she has alleged. The claimant's treatment has been relatively limited and conservative. She has had a few injections, but she not undergone spine or joint surgery, and she reported that physical and aquatic therapy helped significantly, as discussed above. This level of treatment is also inconsistent with the rather extreme functional limitations to which the claimant testified. The undersigned further points out that many of the symptoms the claimant has alleged have little to no objective support in the medical evidence of record, as discussed at Finding 2. For the above reasons, the undersigned finds the medical evidence of record to be more probative as to the claimant's residual functional capacity than her testimony and allegations.

(Tr. 37).

The court finds the ALJ committed no error when assessing Plaintiff's credibility, and Plaintiff's conclusory statement otherwise fails.

### c. Opinion of Treating Physician Dr. Ebel

Finally, Plaintiff asserts that the RFC determination conflicts with Dr. Ebel's opinion from October 3, 2016, that she cannot stand/walk for more than one hour per day and cannot sit for more than two to three hours per day. (R. 12, PageID# 574, *citing* Tr. 461). Plaintiff asserts the

17

ALJ failed to give good reasons for rejecting these opinions of Dr. Ebel. (R. 12, PageID# 575). The Commissioner does not challenge that Dr. Ebel was a treating source. (R. 13, PageID# 596). The Commissioner, however, argues that the ALJ satisfied the treating physician rule. *Id*.

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting Social Security Ruling ("SSR") 96-2p*, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's

application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed the opinions contained in the questionnaire completed by Dr. Ebel as follows:

> On October 3, 2016, Jeffrey Ebel, D.O., the claimant's primary care provider, reported she can stand and walk less than one hour, at one time and total in an eight-hour day; sit less than two or three hours at one time and total in an eight-hour day; lift six to ten pounds frequently and 25 to 50 pounds occasionally; is extremely limited in pushing and pulling; is markedly limited in bending, reaching and handling; and is moderately limited in performing repetitive foot movements (7F). He indicated she has limited spinal range of motion due to scoliosis that is progressing and starting to affect her respiratory status, and severe osteoarthritis of her legs at the knees and hips. He concluded she is unemployable

to 12 months or more. (*Id.*). This opinion has also been given only partial weight. As noted at Finding 3, imaging studies of the claimant's knees were normal, and there is no other objective evidence of severe osteoarthritis. The assessed residual functional capacity for light lifting, *i.e.*, 10 pounds frequently and up to 20 pounds occasionally, is consistent with Dr. Ebel's opinion; however, the further restrictions he described are contradicted by the claimant's work activity, as discussed above.

(Tr. 36).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).* While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

First, it bears noting that the ALJ did not reject Dr. Ebel's opinion in its entirety, but actually adopted material portions of the opinion into the RFC, most significantly the lifting restrictions that were consistent with light exertional work. (Tr. 36). Further, the ALJ offered two primary reasons for discounting the standing/walking and sitting limitations assessed by Dr. Ebel. Dr. Ebel's opinion noted that the limitations were based, at least in part, upon "severe OA [osteoarthritis] of legs at knees and hips." (Tr. 461). The ALJ rejected osteoarthritis as a basis for the extreme standing/walking and sitting limitations based on the normal imaging studies of Plaintiff's knees and the absence of other objective evidence of severe osteoarthritis. (Tr. 36). Dr. Ebel also suggested that his assessed limitations were based on Plaintiff's scoliosis affecting her

respiratory status. (Tr. 461). Just three paragraphs before addressing Dr. Ebel's opinion, the ALJ expressly noted the opinion of Plaintiff's neurosurgeon that "he doubted her respiratory event was related to her scoliosis." (Tr. 36). This demonstrates the ALJ found Dr. Ebel's sitting and standing/walking restrictions inconsistent with the record as a whole—one of the above enumerated factors that an ALJ should consider when weighing a medical opinion. Further, the ALJ also explained that the additional restrictions assessed by Dr. Ebel were contradicted by the claimant's work activity as a waitress. *Id*. Again, it is immaterial that the ALJ found Plaintiff's waitress work did not rise to the level of SGA. An inability to stand/walk for even an hour cannot be reconciled with Plaintiff's waitress work, even if performed only a few hours at a time.

The ALJ's discussion satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). The decision renders it apparent that the ALJ considered the proper factors in determining how much weight to ascribe to Dr. Ebel's opinion even if decision does not explicitly discuss each factor. *See Francis*, 2011 WL 915719, at *3 (the regulations require only consideration of the factors, and does not require an the ALJ to articulate "an exhaustive factor-by-factor analysis").

**2. English Language Skills**

In the second assignment of error, Plaintiff asserts that the ALJ did not sufficiently credit her limited English skills when determining her RFC. (R. 12, PageID# 575-580). Furthermore, Plaintiffs contends that the hypothetical question posed to the VE was insufficient because it did not include limitations in Plaintiff's ability to communicate in English. (R. 12, PageID# 578-580). Plaintiff also suggests that an individual who is approaching advanced age, a category she

21

fell into by the time of her hearing, should be found disabled under the Grid Rules where she cannot perform her past relevant work, is limited to unskilled work, and is limited by illiteracy or inability to communicate in English. (R. 12, PageID# 577).

The ALJ specifically found Plaintiff was able to communicate in English, however. (Tr. 38). The Commissioner also contends that this determination was supported by substantial evidence in the record. (R. 13, PageID# 602). The court agrees. First, Plaintiff saw Dr. McCormick for a neurosurgery consultation in 2016 and presented with an interpreter, but the interpreter expressly stated that Plaintiffs speaks "very good" English, and simply wanted an interpreter present "to make sure she understood everything" and to help her with questions "if she could not come up with the exact right vocabulary." (Tr. 455). In addition, Plaintiff herself testified at the hearing that she worked at the deli counter at a Meijer grocery store where she described her job duties as serving customers, helping them with their requests, and selling deli products. (Tr. 53). Plaintiff also reported working as a sales clerk and even as a cashier.[5] *Id*. Plaintiff also testified that she received a high school diploma in Vietnam, and attended community college in the United States twice, in 2001 and 2015, but never obtaining any credit after dropping out due to pain. (Tr. 52-53). The individual who performed Plaintiff's disability interview, while noting the presence of some language issues, characterized Plaintiff's problems understanding as "minor" and noted Plaintiff was able to answer the interview questions. (Tr. 197) Taken together, this evidence constitutes substantial evidence supporting the ALJ's

---

[5] Pursuant to the Dictionary of Occupational Titles ("DOT"), Plaintiff's past relevant work as a cashier (DOT 211.462-010) generally requires reading level of 2 (a passive vocabulary of 5,000-6,000 words read at rate of 190-215 words per minute, the ability to write compound and complex sentences, and to speak clearly and distinctly. The position involves frequent talking. *Id*.

conclusion that Plaintiff is able to communicate in English.

Although the ALJ did not explain why she found Plaintiff could communicate in English, Plaintiff cites no rule or regulation requiring any particularized level of articulation associated with such a determination. Plaintiff's reliance on the mere fact that she had an interpreter at the hearing or her own self-stated limitations do not undermine the ALJ's conclusion. Furthermore, it is not this court's function to review the evidence *de novo*. The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

Even as a hypothetical question to a VE and the RFC must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant, *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987), it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010) (same). Thus, the ALJ was not required to include English language limitations, in the hypothetical or RFC, that were not accepted.

In addition, it bears noting that the jobs identified by the vocational expert in response to the ALJ's hypothetical were unskilled jobs: assembler (DOT 739.687-030), sorter (DOT 222.687-014), and inspector (DOT 559.687-074). (Tr. 69, 71). Another decision of this district addressed a similar argument. In *Flores v. Berryhill*, 2017 WL 6882551 *22 (N.D. Ohio Dec. 15, 2017) (Greenberg, M.J.), *report and recommendation adopted sub nom. Flores v. Comm'r of Soc. Sec.*, 2018 WL 325556 (N.D. Ohio Jan. 8, 2018) (Gaughan, J.), the court determined "the ALJ did not err by failing to specifically articulate [claimant's] inability to speak English in the hypotheticals posed to the VE." The *Flores* decision observed that the claimant had "not demonstrated the jobs provided by the VE require an English speaking or writing ability greater than his own." *Id.*; *see also Amir v. Comm'r of Soc. Sec.*, 705 Fed. App'x 443, 451 (6th Cir. 2017) (rejecting argument that ALJ's failure to include the claimant's level of English mastery in a hypothetical posed to the VE required a reversal or remand).

Finally, as the ALJ's determination—that Plaintiff was able to communicate in English— was supported by substantial evidence, Plaintiff's grid argument is moot. According to Grid Rule 202.10, an individual who is closely approaching advanced age, who is capable of light work, who has a limited education but is at least literate and able to communicate in English, and has only unskilled work experience, is not disabled.

## IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: January 16, 2019

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).